UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JACQUES LOUSSIER,

                Plaintiff,

     -against-                                  02 Civ. 2447(KMW)
                                                ORDER
UNIVERSAL MUSIC GROUP, INC.,
INTERSCOPE RECORDS, INC., INTERSCOPE
RECORDS, L.L.C., MARSHALL MATHERS
p/k/a EMINEM, and ANDRE YOUNG, p/k/a
DR. DRE,

                Defendants.

------------------------------------X

WOOD, U.S.D.J.:


        Plaintiff Jacques Loussier ("Plaintiff") sues Defendants

Universal Music Group, Inc., Interscope Records, Inc., Interscope

Records, L.L.C., Marshall Mathers, p/k/a Eminem, and Andre Young,

p/k/a Dr. Dre (collectively, "Defendants"), for copyright

infringement.  This Order preliminarily grants in part and denies

in part Defendants' first motion in limine to preclude Plaintiff

from introducing evidence concerning Defendants' prior conduct,[1]

and Defendants' consolidated motions in limine to exclude certain

other evidence at trial.[2]

---

[1]Defendants' motion in limine # 1.

[2]Defendants' motions in limine ## 5-16.

## I.   Background

Plaintiff alleges that Defendants willfully infringed upon his copyright in a musical composition entitled "Pulsion," by using a portion of "Pulsion" in Defendant Mathers's song, "Kill You," without Plaintiff's permission.  <u>See</u> Am. Compl., ¶ 17.  The song "Kill You" appears as one of eighteen tracks on an album jointly produced and released by Defendants, entitled "The Marshall Mathers LP" (the "MMLP Album").  Defs.' Local Rule 56.1 Statement of Undisputed Material Facts, ¶ 1; Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts, ¶ 1.

## II.  Motion In Limine Standard

The purpose of a motion <u>in limine</u> is to allow the trial court to rule on the relevance and admissibility of certain evidence before it is offered at trial.  <u>See</u> <u>Luce v. United States</u>, 469 U.S. 38, 41, n.4 (1984) (noting that "although the Federal Rules of Evidence do not explicitly authorize <u>in limine</u> rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials"); <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996) (noting that <u>in limine</u> motions "aid the trial process" by  enabling courts to make advance rulings on evidence, thereby avoiding "lengthy argument at, or interruption of, the trial"); Fed. R. Evid. 104(a) ("Preliminary questions concerning the qualification of a

person to be a witness...or the admissibility of evidence shall
be determined by the court....").

The Court may rely on the Federal Rules of Evidence and its
own broad discretion in determining whether or not to exclude
certain evidence at trial.  See United States v. Corr, 543 F.2d
1042, 1051 (2d Cir. 1976) ("questions relating to the
admissibility of evidence, relevancy of proffered evidence and
the scope of cross-examination are all questions to be determined
subject to the rules of evidence and in doubtful cases subject to
the discretion of the trial court"); Shatkin v. McDonnell Douglas
Corp., 727 F.2d 202, 207 (2d Cir. 1984) ("The trial judge is
vested with wide discretion in determining whether an adequate
foundation has been laid for admission of the evidence and
whether its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issue, or misleading
the jury.").  The Court should exclude evidence on a motion in
limine "only when the evidence is clearly inadmissible on all
potential grounds."  Commerce Funding Corp. v. Comprehensive
Habilitation Servs., No. 01 Civ. 3796 (PKL), 2005 U.S. Dist.
LEXIS 7902, *10 (S.D.N.Y., May 2, 2005)

A court considering a motion in limine may reserve judgment
until trial, so that the motion is placed "in an appropriate
factual context."  Nat'l Union Fire Ins. Co. v. L.E. Meyers Co.
Group, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).  Furthermore, the

Court's ruling regarding a motion <u>in limine</u> is "subject to change when the case unfolds" at trial. <u>Luce</u>, 469 U.S. at 41-42 (noting that "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous <u>in limine</u> ruling").


## III. Discussion

### 1. Defendants' Motion to Exclude Evidence of Prior Conduct of Defendant Young and Co-Defendants

Defendants move to exclude evidence relating to Defendant Andre Young's four criminal convictions,[3] and "evidence of other unrelated, prior bad acts concerning Young (or any other Defendants)." Defs.' Mem. in Supp. of Mot. #1, at 1. Plaintiff does not oppose Defendants' motion to exclude evidence concerning Defendant Young's criminal history; therefore, this portion of the motion is granted. However, the Court denies Defendants' request for a blanket exclusion of any other prior bad acts concerning Defendants, because it "lacks the necessary specificity" to be decided <u>in limine</u>. <u>See</u> <u>National Union Fire Ins.</u>, 937 F. Supp. at 287. If Plaintiff seeks to offer any other

---

[3]Specifically, Defendants move to exclude evidence concerning Andre Young's (1) 1991 misdemeanor battery conviction and related civil claim, (2) 1992 felony battery conviction, (3) 1992 misdemeanor battery conviction, and (4) 1994 misdemeanor DUI conviction that constituted a parole violation.

prior bad acts at trial, Plaintiff shall do so no later than two weeks before trial.

## 2.    Defendants' Motion to Exclude Evidence of Defendants' Wealth, Financial Condition, Unrelated Revenues, and Size

Plaintiff seeks to offer evidence concerning (1) the wealth and financial condition of Defendants, (2) the revenues Defendants have earned other than from "Kill You" or the MMLP Album, and (3) the size of the corporate Defendants; on the ground that there are "legitimate areas of inquiry that necessarily implicate" this evidence.  See Pl.'s Mem. in Opp'n to Defs.' Consol. Mots. ("Pl.'s Mem."), 1-2.

Defendants move to exclude this evidence on the ground that it is not relevant to the calculation of net profits, gross revenue, and recovery in general.  Furthermore, Defendants contend that even if this evidence is relevant, it would unfairly prejudice the jury against Defendants by turning the trial "into a battle of David and Goliath."  Defs.' Reply Mem. in Supp. of Consol. Mots. ("Defs.' Reply"), 1.

Plaintiff has made no attempt to show how evidence of the individual Defendants' wealth, financial condition, and unrelated revenues is relevant to either the liability or damage phase of this action.  See Fed. R. Evid. 401-02.  Thus, Defendants' motion to exclude it is granted.

5

Any probative value that evidence of the <u>corporate</u> Defendants' wealth, financial condition, and unrelated revenues may have during the <u>liability</u> phase of the trial is substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties. <u>See</u> Fed. R. Evid. 403; <u>United States v. Birney</u>, 686 F.2d 102,106 (2d Cir. 1982) ("courts should be sensitive to any unfair advantage that results from the capacity of the evidence to persuade by illegitimate means"). Thus, the Court excludes this evidence during the liability phase.

However, if the jury finds Defendants liable, references to the <u>corporate</u> Defendants' wealth, financial condition, and unrelated revenues may become necessary during the <u>damage</u> phase of the trial -- if, for example, Defendants seek to deduct company overhead or other general corporate costs from their MMLP Album profits. <u>See</u> Pl.'s Mem, 1-2. The Court therefore denies Defendants' motion to exclude evidence of the corporate Defendants' wealth, financial condition, and unrelated revenues during the damage phase, but will consider objections to the introduction of such evidence if and when they arise.

The Court preliminarily denies Defendants' motion to exclude evidence regarding the size of the corporate Defendants, because it lacks the appropriate factual context to be determined <u>in limine</u>. <u>See</u> <u>Nat'l Union Fire Ins.</u>, 937 F. Supp. at 287.

Defendants may renew this motion at trial.

**3.    Defendants' Motion to Exclude Evidence of Foreign Non-Party Revenues or Profits**

Plaintiff does not oppose Defendants' motion to exclude as irrelevant evidence concerning revenues derived and received outside the United States by non-party entities.[4]  The Court thus grants the motion.

**4.    Defendants' Motion to Exclude Evidence concerning Prior, Unrelated Conduct of Defendant Mathers**

Plaintiff seeks to offer evidence concerning two incidents that occurred in June 2000, for which Defendant Mathers was charged with possession of a concealed weapon (the "Incidents").[5] Plaintiff contends that this evidence is relevant because "a reasonable jury could conclude that these allegedly violent Incidents increased public interest in Eminem's most violent songs, particularly 'Kill You'...which, in turn, sparked sales of the Album."  Pl.'s Mem., 4.

Defendants move to exclude evidence of the Incidents, on the

---

[4]Plaintiff notes that although he "intends to offer evidence concerning the revenues that the defendants earned from worldwide exploitation of "Kill You" and the [MMLP] Album...he does not intend to offer evidence concerning revenues or profits retained by these foreign entities." Pl.'s Mem., 3.

[5]The first incident was an argument in Royal Oak, Michigan, during which Defendant Mathers allegedly revealed his possession of a handgun.  The second incident was a confrontation in Warren, Michigan, during which Defendant Mathers allegedly threatened and "pistol whipped" a man.

grounds that it is (1) not relevant to Plaintiff's claim, (2) inadmissible character evidence, and (3) inadmissible to impeach Mathers's credibility.  In addition, Defendants contend that any probative value of the evidence is substantially outweighed by its potential for prejudice and confusion.

The danger of unfair prejudice and confusion that would result from admission of evidence of the Incidents substantially outweighs its purported probative value.  The evidence would cause the jury confusion over whether Mathers's alleged gun possession is at issue in this case, which it is not.  Plaintiff has not attempted to argue that this evidence is admissible under Federal Rule of Evidence 404(b), which it is not.

Furthermore, a limiting instruction to the jury would be insufficient to "cure the risk of undue prejudice."  See Fed. R. Evid. 403; United States v. Nachamie, 101 F. Supp. 2d 134, 146 (S.D.N.Y. 2000) (finding that "a limiting instruction would provide insufficient protection" where introduction of defendant's prior convictions carries "high risk of prejudice" and opposing party "has less prejudicial ways to prove its case").

The Court therefore grants Defendants' motion to exclude evidence of the Incidents.

**5.   Defendants' Motion to Exclude Materials from eBay and Epinions Websites**

Plaintiff seeks to offer (1) print-outs from the eBay website (www.eBay.com) allegedly showing the sale of certain "mix tape" compact discs containing the song "Kill You" (the "eBay evidence"), and (2) print-outs from the Epinions website (www.epinions.com) allegedly showing fan reviews of the MMLP Album (the "Epinions evidence").  Plaintiff argues that even if this evidence is inadmissible, the Court should permit Plaintiff's expert witness, Karen Durant ("Durant"), to testify about it at trial, because it is the type of information reasonably relied upon by experts in the field.

Defendants move to exclude the eBay evidence on the grounds that it is irrelevant, is inadmissible hearsay, lacks authentication, and violates the best evidence rule; and the Epinions evidence on the grounds that it is irrelevant, is inadmissible lay or expert opinion, lacks authentication, and is inherently untrustworthy.

(I)   The eBay Evidence

The printouts from the eBay website are inadmissible hearsay, because they constitute out-of-court statements being offered to prove that the mix tapes were being sold on eBay.  See Fed. R. Evid. 801-02.  Furthermore, the eBay evidence lacks authentication, because there is insufficient evidence to support

a finding that the mix tapes actually existed.  See id. at 901.
Plaintiff has not offered any arguments to the contrary.  The
Court therefore grants Defendants' motion to exclude the eBay
evidence.

    (ii)  <u>The Epinions Evidence</u>

    Plaintiff seeks to offer the Epinions evidence to
demonstrate that "Kill You" was being talked about on fan review
sites three years after its release, which is allegedly relevant
to the issue of apportionment because it "tends to show the
popularity" of the song and "refutes defendants' argument that
'Kill You' contributed little or nothing to Album sales."  Pl.'s
Mem., 12.  Plaintiff claims that he is not offering the Epinions
printouts to prove the truth of the statements contained therein.
Id. at 14.

    However, the mere existence of statements about "Kill You"
on the Epinions website, devoid of their content, would be
irrelevant, because they would not tend to show anything about
the popularity of the song.  See Fed. R. Evid. 401 ("'Relevant
evidence' means evidence having any tendency to make the
existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be
without the evidence.").  In fact, most of the Epinions printouts
at issue discuss every song and skit on the MMLP Album in turn,
and the mere fact that "Kill You" is among them is not probative

of the song's role in selling the MMLP Album.

To the extent that the Epinions printouts contain the proposition that "Kill You" contributed to sales of the MMLP Album, that content is inadmissible hearsay. <u>See</u> Fed. R. Evid. 801 ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Furthermore, the postings are made anonymously, and thus are inherently untrustworthy. This conclusion is supported by the fact that both the eBay and Epinions websites explicitly disclaim the ability to control or verify the identities, listings, and opinions of their users. <u>See</u> Defs.' Mem. in Supp. of Consol. Mots. ("Defs.' Mem."), 15, 20.

The Court therefore grants Defendants' motion to exclude the Epinions evidence.

    (iii)  <u>Durant's Testimony</u>

Rule 702 of the Federal Rules of Evidence states that data that is "reasonably relied upon by experts in the particular field in forming opinions or inferences upon a subject" need not be admissible in evidence in order for an expert opinion that relies on it to be admitted. Fed. R. Evid. 702; <u>see</u> <u>United States v. Locascio</u>, 6 F.3d 924, 938 (2d Cir. 1993) ("expert witnesses can testify to opinions based on hearsay or other

11

inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions"). The Rule further specifies that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Plaintiff has failed to offer adequate support for his contention that "the Internet can be reasonably relied upon by experts in formulating their opinions." See Pl.'s Mem., 18. Plaintiff has not shown that experts in the relevant field reasonably rely on anonymous postings on websites like eBay and Epinions.

Even if Plaintiff shows that experts rely on this type of evidence, which he has not shown, "a district court is not bound to accept expert testimony based on questionable data simply because other experts use such data in the field." United States v. Locascio, 6 F.3d at 938. Testimony relying upon the eBay and Epinions evidence would be neither "based upon sufficient facts or data," nor "the product of reliable principles and methods." See Fed. R. Evid. 702.

The Court therefore grants Defendants' motion to preclude Durant from testifying about the inadmissible eBay and Epinions

material.

**6.    Defendants' Motion to Exclude Evidence of <u>Vanity Fair</u> Chart**

Plaintiff seeks to offer a chart contained in the "Vanities" section of the November 2003 edition of <u>Vanity Fair</u> magazine, which refers to "Kill You" as Defendant Mathers's "signature song" (the "Chart").[6]  Plaintiff contends that the Chart is relevant to the issue of apportionment, because "the fact that 'Kill You' - unlike many other songs on the MMLP Album - is still receiving press attention today [supports] the contention that it had a significant impact upon sales [of the MMLP Album] three years ago."  Pl.'s Mem., 26-27.  Plaintiff further argues that even if the Chart is inadmissible, the Court should permit Durant to testify about it at trial to assist the jury in evaluating Durant's opinion.

Defendants move to exclude the Chart and any testimony concerning it, on the grounds that (1) the Chart is intended to be satirical and is therefore irrelevant; (2) it is inadmissible hearsay; and (3) it contains statements that constitute inadmissible lay opinion and lack foundation.

Plaintiff's claim that the Chart is not being offered for

_____

[6]The Chart, entitled "Intelligence Report: The Musicians," was written by Richard Rushfield and Adam Leff.  <u>See</u> <u>Vanity Fair</u> Chart, Defs.' Notice of Consol. Mots., Decl. of Emily Frangos, Ex. 9.

the truth of its reference to "Kill You" as Mathers's signature song is doubtful, as illustrated by the fact that Plaintiff devotes two and a half pages of his brief to arguing that the information contained in the Chart is accurate.  See Pl.'s Mem., 22-24; Decl. of Sara Edelman ("Edelman Decl."), Exs. 15-18.

The Court finds that the information contained in the Chart is inadmissible hearsay.  In addition, the Chart has little, if any, probative value; contrary to Plaintiff's contention, the press attention that "Kill You" is receiving today has at most a tenuous connection to the impact of the song on sales of the MMLP Album three years ago.  See Pl.'s Mem., 26-27.

Thus, the Court grants Defendants' motion to exclude all evidence and testimony regarding the Chart.

## 7.  Defendants' Motion to Exclude Evidence concerning the Musical Group NWA and the Song "F*** tha Police"

Plaintiff seeks to offer Defendant Young's deposition testimony regarding Young's statements that controversy helps sell records, and that controversy around the song "F*** tha Police" may have helped sell records for the musical group NWA.[7] See Excerpts from Dep. of Andre Young, 88:24-90:17, Edelman Decl., Ex. 22.  Plaintiff argues that this evidence is necessary to rebut Defendants' expert witness Angela Thomas's testimony

---

[7]Defendant Young was a member of the musical group NWA, which is an acronym for "Niggas With Attitude."

that lyrical controversy has no impact upon the sales of hip-hop albums.  Pl.'s Mem., 30.

Defendants move to exclude any references to NWA and its song "F*** tha Police" (collectively, the "NWA evidence"), on the ground that this evidence has no probative value.  Defendants also argue, in the alternative, that any probative value of the NWA evidence is outweighed by its danger of prejudice, confusion, and waste of time.

The prejudice that would result from admission of this evidence is substantial – the phrases used and the matters alluded to are highly offensive to a large segment of the public. The probative value of the fact that a defendant in this case used these phrases in unrelated work is minimal.  If Plaintiff wishes to introduce other evidence that controversy regarding one song could help sell the album containing the controversial song, the Court will consider its admissibility.

The Court therefore grants Defendants' motion to exclude the NWA evidence.

## 8.   Defendants' Motions to Exclude Evidence regarding Royalty Legislation and Examinations

Plaintiff seeks to offer evidence relating to California legislation on record industry royalty accounting practices (the

"Legislation evidence"),[8] and evidence of royalty examinations prepared for the artist Defendants Mathers and Young (the "Examinations evidence"). Plaintiff contends that this evidence is "directly relevant to challenge the credibility and show the bias of defendants' damages expert, Michael Wallace ["Wallace"], in showing that he did not consider all the relevant documents and information in preparing his reports of defendants' revenues and expenses." Pl.'s Mem., 36. However, Plaintiff does not dispute "the amount of the royalty payments" to defendant and non-defendant artists that Wallace calculated in his report. See Pl.'s Mem. in Opp'n to Defs.' Mot. to Exclude Testimony of Vanrick A. Clarke, 9.

Defendants move to exclude the Legislation evidence on the grounds that (1) it is irrelevant; (2) any slight probative value is substantially outweighed by its potential for prejudice and confusion; (3) it is inadmissible hearsay; and (4) Magistrate Judge Ellis determined that Defendants' audit materials were not discoverable. Defendants move to exclude the Examinations evidence on the grounds that it is irrelevant, prejudicial, and

_____

[8]Specifically, Plaintiff seeks to introduce evidence relating to legislative hearings on California Senate Bill No. 1034, which would entitle California artists to audit books and records of record companies to determine whether or not the artists received all the royalties that the companies owed them pursuant to their contracts. See Pl.'s Mem., 36.

was not discoverable.[9]

(I)   The Legislation Evidence

The Court finds that the Legislation evidence is irrelevant,
because Plaintiff has not shown that it would be probative of any
fact that is consequential to this litigation.  See Fed. R. Evid.
401-02; United States v. Diaz, 878 F.2d 608, 614 (stating that
there are two distinct requirements implicit in Rule 401's
definition of relevance: "(1) the evidence must be probative of
the proposition it is offered to prove, and (2) the proposition
to be proved must be one that is of consequence to the
determination of the action.").  Because Plaintiff does not
dispute Wallace's royalty calculations, Wallace's failure to
consider the Legislative evidence in preparing his report does
not have any bearing on his bias or credibility.  The Court
therefore grants Defendants' motion to exclude this evidence and
any testimony about it.

(ii)   The Examinations Evidence

The Examinations evidence is also irrelevant to Wallace's
conclusions because it relates only to the division of profits
among Defendants, not to the collective net profits that

_____

[9]Plaintiff notes that Magistrate Judge Ellis ruled that
documents relating to the Examinations were not discoverable
because the discovery period had closed; he did not rule on
whether or not Plaintiff could question Defendants about the
Legislation and the Examinations.

Plaintiff seeks to recover from all Defendants.  The Court

therefore grants Defendants' motion to exclude this evidence and

any testimony about it.

**9.   Defendants' Motion to Exclude Evidence concerning Illegal
      Downloading of "Kill You" or the MMLP Album**

Plaintiff seeks to offer evidence and testimony concerning

the availability of "Kill You" or the MMLP Album for illegal

downloading (the "Downloading evidence"), to refute Defendants'

argument that consumers could not hear "Kill You" before the MMLP

Album was officially released.[10]  Defendants move to exclude the

Downloading evidence on the ground that it, <u>inter alia</u>, lacks

foundation.[11]

Neither party has specified what evidence is encompassed

within the Downloading evidence, or who will testify about it.

Therefore, the Court is unable to determine whether or not the

evidence is relevant, and whether Plaintiff can lay a foundation

for it.  The Court preliminarily denies this motion, but will

reconsider it if Defendants renew the motion with greater

specificity.

---

[10]Plaintiff implies that the Downloading evidence is relevant
to the issue of apportionment, because it strengthens Plaintiff's
position regarding "Kill You"'s contribution to the 1.7 million
sales of the MMLP Album during its first week of release.  <u>See</u>
Pl.'s Mem., 40.

[11]Defendants also argue that the Downloading evidence is
irrelevant and prejudicial.

**10. Defendants' Motion to Exclude Evidence concerning the Availability of the MMLP Album at Listening Stations**

Plaintiff seeks to offer evidence that the MMLP Album was available at listening stations (the "Listening Stations evidence"), which are areas in record stores where customers can privately listen to certain albums with headphones. Plaintiff contends that this evidence is relevant to showing that "Kill You" helped generate sales of the MMLP Album because it is the first song on the Album, and "customers who visit listening stations typically listen to, at the very least, the first few tracks of an album before making the decision about whether to purchase it." Pl.'s Mem., 44.

Defendants move to exclude the Listening Stations evidence on the grounds that it lacks foundation and is inadmissible hearsay, based on limited information that Plaintiff's expert, Durant, obtained from unidentified store clerks.

Plaintiff's Listening Stations evidence is based upon speculation. That the MMLP Album may have been available at listening stations, and that "Kill You" is the first musical track on the Album, does not tend to make it more probable that "Kill You" played a significant role in generating sales of the MMLP Album. See Fed. R. Evid. 401-02. Thus, the Listening Stations evidence is irrelevant, and the Court grants Defendants' motion to exclude it.

**11. Defendants' Motion to Exclude Evidence concerning Wallace's Prior Testimony on Behalf of Defense Counsel and Defendants**

Plaintiff seeks to offer evidence about the prior testimony of Wallace (Defendants' damage expert) on behalf of (1) defense counsel Mitchell Silberberg & Knupp LLP in a malpractice case (the "MSK case"), and (2) Island Def Jam, a division of the Universal Defendants, in a case brought by TVT Records (the "TVT Records case"). Plaintiff contends that this evidence is relevant to Wallace's bias and credibility, because it shows that "Mr. Wallace is simply at the disposal of defendants' [sic] and their counsel's [sic] to testify on whatever issue they happen to be facing at the time." Pl.'s Mem., 48-49.

Defendants move to exclude evidence of the MSK and TVT Records cases on the grounds that this evidence is irrelevant, prejudicial, and would result in a significant waste of time. Defendants contend, in the alternative, that if the Court allows Plaintiff to refer to Wallace's prior testimony, it should bar Plaintiff from referring to the nature of the MSK case, and the name, nature, and outcome of the TVT Records case.

The Court grants Defendants' motion to exclude the prior testimony at issue, because the evidence is not probative of bias, and because it will result in unnecessary digression and delay. See Fed. R. Evid. 403; United States v. Jamil, 707 F.2d 638, 643 (2d Cir. 1983) ("justification for excluding relevant

evidence generally arises when...it raises substantial collateral issues which would cause unjustifiable delay").

## 12. Defendants' Motion to Exclude Evidence concerning the Pro Tools Compact Discs

Plaintiff seeks to offer fourteen compact discs that use Pro Tools software to compare sound recordings of "Pulsion" with segregated portions of the master recording of "Kill You" (the "Pro Tools CDs").[12]  Defendants object to the comparison of these recordings, because what is being compared is not the same as what was released commercially.  Plaintiff concedes that the version of "Pulsion" used on the Pro Tools CDs has a "slightly slower" tempo than the commercially released version of the composition, and explains that this was done in order to synchronize the music of "Pulsion" with the tracks on the "Kill You" master recording, for sake of comparison.  Pl.'s Mem., 50-51.  Plaintiff does not agree with Defendants' additional contention that the master recording of "Kill You" differs from the commercially released version of the song, in that the master track "contained the raw material...which subsequently were [sic] changed and mixed by the producer of the track before release to

---

[12]Plaintiff has submitted only two of the fourteen Pro Tools CDs to the Court.  Edelman Decl., Exs. 29-30.  One CD allegedly combines the music of "Pulsion" with just the <u>vocal track</u> from the master recording of "Kill You"; the other allegedly combines the music of "Pulsion" with just the <u>guitar track</u> from the master recording of "Kill You."  <u>Id</u>.

the public."  Defs.' Mem., 57; <u>see</u> Pl.'s Mem., 54.

Plaintiff contends that the Pro Tools CDs are nonetheless relevant and probative, because they "demonstrate beyond dispute that defendants infringed Mr. Loussier's copyright."  Pl.'s Mem., 50.  Defendants move to exclude the Pro Tools CDs on the ground that they are irrelevant, because, as stated above, they compare recordings that are allegedly materially different from the versions of "Pulsion" and "Kill You" that were released to the public.  In addition, Defendants allege that the Pro Tools CDs cannot be authenticated, because Plaintiff chose not to preserve the notes and computer files relating to the creation of the CDs (the "back-up files").  Defendants argue that Michael McCoy ("McCoy"), the recording engineer who created the Pro Tools CDs, cannot authenticate the CDs without the back-up files, because he cannot verify what exactly was contained in the recordings that he was given, or the extent to which he slowed down the tempo of "Pulsion" to create the Pro Tools CDs.  <u>See</u> Defs.' Mem., 58.  Defendants also argue that presenting evidence on the Pro Tools CDs would be confusing, prejudicial, and wasteful of time.

Plaintiff has shown that he can authenticate the Pro Tools CDs.  <u>See</u> Fed. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

claims"). Plaintiff's counsel's former legal assistant, Daniel Glimcher ("Glimcher"), has stated that he "provided Michael McCoy...with the Master Recording [of 'Kill You'] that defendants produced to plaintiff in discovery, as well as a CD containing 'Pulsion' that plaintiff produced to defendants in this action," and can testify to this at trial. Decl. of Daniel A. Glimcher, ¶ 6.[13] In addition, although McCoy destroyed the notes and files relating to the Pro Tools CDs, his deposition testimony indicates that he can testify in considerable detail, from his personal knowledge and memory, about the steps he took in creating the CDs. See, e.g., Dep. of Michael McCoy, Defs.' Notice of Consol. Mots., Decl. of Emily Frangos, Ex. 19, at 14:13-15:14, 19:1-18, 43:15-23, 44:20-48:18. Defendants, of course, may cross-examine Glimcher and McCoy at trial about their testimony.

The fact that the versions of "Pulsion" and "Kill You" used in the Pro Tools CDs are not identical to the commercially released versions of the songs does not render the evidence irrelevant. The versions on the two Pro Tools CDs before the Court are sufficiently similar to the commercially released songs to have some probative value, and any possibility of confusing the jury can be obviated by cross-examination.

---

[13]Defendants object that they were not advised that Glimcher would be a trial witness and that they have hence not deposed him. The Court will allow Defendants to depose Glimcher between now and August 1, 2005.

Therefore, the Court denies Defendants' motion to exclude evidence relating to and including the two Pro Tools CDs that are before the Court.[14]  See <u>supra</u>, note 12.


## IV.  Conclusion

_____For the reasons stated above, the Court*:*

(1) grants in part and denies in part Defendants' motion to exclude evidence of Defendants' prior conduct;

(2) grants in part and denies in part Defendants' motion to exclude evidence of Defendants' wealth, financial condition, unrelated revenues, and size;

(3) grants Defendants' motion to exclude evidence of foreign non-party revenues or profits;

(4) grants Defendants' motion to exclude evidence concerning two weapon charges involving Defendant Mathers;

(5) grants Defendants' motion to exclude print-outs from eBay and Epinions websites and to preclude Durant from testifying

---

[14]Defendants' contention that the Pro Tools CDs should be excluded as a sanction for spoilation of evidence is unwarranted, in the absence of a showing that the discarding of the back-up files was intended to prejudice Defendants, or that Defendants have actually been prejudiced by the absence of this evidence. Defendants have not substantiated their claim that the evidence is "crucial to defendants' ability to effectively challenge the validity of the Pro Tools CDs."  <u>See</u> Defs.' Reply, 59.

about the print-outs;

(6) grants Defendants' motion to exclude evidence and testimony concerning the <u>Vanity Fair</u> chart;

(7) grants Defendants' motion to exclude evidence concerning the musical group NWA and its song "F*** tha Police";

(8) grants Defendants' motions to exclude evidence concerning California legislation on record industry audits and royalty examinations prepared for Defendants Mathers and Young;

(9) denies Defendants' motion to exclude evidence concerning the availability of "Kill You" and the MMLP Album for illegal downloading;

(10) grants Defendants' motion to exclude evidence concerning the availability of the MMLP Album and "Kill You" at listening stations;

(11) grants Defendants' motion to exclude evidence concerning Wallace's prior testimony in the MSK and TVT Records cases; and

(12) denies Defendants' motion to exclude evidence relating to and including the Pro Tools CDs, to the extent that the motion relates to the two Pro Tools CDs that are before the Court.

The Parties are directed to submit a joint pre-trial order, proposed voir dire questions, and requests to charge by August 8,

2005.[15]  The trial is scheduled to begin on August 29, 2005.[16]


SO ORDERED.


Dated:    New York, New York
          July 14, 2005

                              _____
                                     Kimba M. Wood
                              United States District Judge


Copies of this Order have been sent to counsel for the Parties.

---

[15]Counsel should consult this Judge's individual rules for detailed instructions on how to prepare and submit the joint pre-trial order, proposed voir dire questions, and requests to charge.

[16]Counsel must notify the Court and their adversaries, within one week of the date of this Order, of any potential scheduling conflicts that would prevent the trial from beginning on the date indicated above.  Counsel should also notify the Court and all counsel, at the earliest possible time, of any scheduling problems involving out-of-town witnesses or other exigencies. The Court will seek to accommodate everyone, but cannot commit now to doing so.