```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

JACQUES LOUSSIER,

                Plaintiff,

    -against-                              02 Civ. 2447(KMW)
                                           ORDER
UNIVERSAL MUSIC GROUP, INC.,
INTERSCOPE RECORDS, INC., INTERSCOPE
RECORDS, L.L.C., MARSHALL MATHERS
p/k/a EMINEM, and ANDRE YOUNG, p/k/a
DR. DRE,

                Defendants.

-------------------------------------X
```

WOOD, U.S.D.J.:

Plaintiff Jacques Loussier ("Plaintiff") sues Defendants Universal Music Group, Inc., Interscope Records, Inc., Interscope Records, L.L.C., Marshall Mathers, p/k/a Eminem ("Mathers"), and Andre Young, p/k/a Dr. Dre ("Young"), (collectively, "Defendants"), for copyright infringement. The parties have filed a number of motions in limine. This Order denies Plaintiff's first motion in limine to exclude evidence of Defendants' consumer survey, and grants in part and denies in part Plaintiff's fourth motion in limine relating to the originality of Plaintiff's composition.

### I. Background

Plaintiff alleges that Defendants willfully infringed upon his copyright in a musical composition entitled "Pulsion," by

using a portion of "Pulsion" in Defendant Mathers's song, "Kill You," without Plaintiff's permission. See Am. Compl., ¶ 17. The song "Kill You" appears as one of eighteen tracks on an album jointly produced and released by Defendants, entitled "The Marshall Mathers LP" (the "MMLP Album"). Defs.' Local Rule 56.1 Statement of Undisputed Material Facts, ¶ 1; Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts, ¶ 1.

## II. Discussion

### A. Plaintiff's Motion to Exclude the MMLP Album Survey

Defendants retained Field Research Corporation ("Field"), a research firm specializing in marketing and public opinion surveys, to conduct a survey to determine the value of the song "Kill You" to the MMLP Album (the "Survey"). Plaintiff seeks to exclude evidence of the Survey on the grounds that: (1) the Survey is inadmissible hearsay; (2) the Survey is not admissible under the residual hearsay exception of Federal Rule of Evidence 807; and (3) the Survey's probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, and undue delay, under the terms of Federal Rule of Evidence 403. Plaintiff also seeks to preclude the testimony of E. Deborah Jay ("Jay"), Defendants' expert witness who designed the Survey.

The methodology of the Survey was as follows. Field hired

2

interviewers to intercept shoppers at fourteen shopping malls in eleven states around the country. The interviewers showed copies of the MMLP Album to 322 people between the ages of sixteen and thirty-four who had purchased the Album. All of the songs in the MMLP Album were listed on the back cover of the CD case. The interviewers allowed the respondents to examine the Album's CD case during the interviews.

The interviewers asked the following questions:

1. "What are the main reasons why you purchased this CD?"
2. "Are there any other reasons why you purchased this CD?"
3. "Did you purchase this CD for any particular song or songs?"

If respondents answered the third question in the affirmative, the interviewers asked one further question:

4. "What song or songs did you mainly purchase this CD for?"

The Survey reported that one percent of respondents mentioned "Kill You" in response to the first two questions, and seven percent of respondents mentioned "Kill You" in response to the questions 3 and 4. Defs.' Mem. in Opp'n to Pl.'s Mot. to Exclude Evid. of Defs.' Consumer Survey ("Defs.' Mem. re Survey"), 1.

The Second Circuit has recognized that "the general trend has been toward the admission of surveys of various kinds." Schering Corp. v. Pfizer Inc., 183 F.3d 218, 225 (2d Cir. 1999). This trend has occurred even though, as Defendants point out, hearsay is inherent in most surveys. The question presented by this motion is not whether the Survey is hearsay (it is), but

whether any hearsay exception applies.

The Court agrees with Plaintiff that the Survey evidence is not admissible under any of the class exceptions to the hearsay rule found in Rule 803, but the Court admits the Survey under the residual hearsay exception.  Fed. R. Evid. 807.  The Court rejects Plaintiff's argument that the Survey evidence should be excluded as prejudicial under Rule 403.

### (1)  Residual Hearsay Exception

To admit hearsay evidence under the residual hearsay exception, a court must find: (1) that the evidence has circumstantial guarantees of trustworthiness equivalent to the exceptions covered in Rules 803 and 804; (2) that the statement is offered as evidence of a material fact; (3) that the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (4) that the general purposes of the Federal Rules of Evidence and the interests of justice will best be served by admission of the evidence.  Fed. R. Evid. 807.  The Survey meets these conditions.

#### i. Circumstantial Guarantees of Trustworthiness

Schering held that a court should consider a survey's trustworthiness in light of the four classic, hearsay dangers – insincerity, faulty perception, faulty memory, and faulty narration – and the special risk that "parties usually offer

surveys to support statistical inferences...[and] [t]hese inferences can be subject to methodological error and can sometimes be manipulated through artful data collection or presentation." 183 F.3d at 232-33. A survey's methodology can affect both the admissibility of the survey, and the weight it should be accorded.

Plaintiff claims that the Survey is flawed because it: (1) asked improperly open-ended questions with no follow-up questions; (2) relied upon respondents' memories; (3) failed to use a control group; (4) reflected an inaccurate demographic sample; and (5) analyzed data in a flawed and misleading way. However, the Court agrees with Defendants that in this case, the Survey has the required "circumstantial guarantees of trustworthiness." Fed. R. Evid. 807.

(a) Open-ended questions

Plaintiff contends that the Survey was flawed because its questions were "entirely open-ended" and "did not adequately probe the reasons each respondent purchased the [MMLP Album]." Pl.'s Mem. in Support of Mot. to Exclude Evid. of Defs.' Consumer Survey ("Pl.'s Mem. re Survey"), 11-12.[1] However, the

---

[1] Plaintiff argues, for example, that "many Respondents said that they purchased the [MMLP Album] because of the "Songs," the "Beats," or because they "Just liked it." (Jay Report at 13). The interviewer could have followed up such responses by asking "the Songs?" or "the Beats" or "Why did you like it?" which would have prompted the Respondents to specify the songs and/or beats for which [they] purchased the CD." Pl.'s Mem. re Survey, 12-13.

5

possibility that additional questions could have been asked during the course of the Survey, which questions "may have resulted in [more] specific mentions of 'Kill You,'" goes to the weight, not the admissibility, of the evidence. Plaintiff is, of course, free to cross-examine Jay about the questions she did or did not include when designing the Survey.

Furthermore, some of Plaintiff's proposed questions could have led to absurd results. As Plaintiff's expert witness, Ivan Ross ("Ross"), admitted during his deposition, if a respondent answered "no" to the question "Would you have purchased this CD if it did not include 'Kill You?',", and also answered "no" to the equivalent question about every other song on the MMLP Album, 100% of the Album's value would be attributed independently to each song. See Tr. of Dep. of Ivan Ross ("Ross Dep."), 108:8-21. Such a conclusion would be meaningless.

(b) Reliance on memory

Plaintiff contends that the Survey is flawed also because it relied upon respondents' memories of why they purchased the MMLP Album, which memories were "subject to rapid 'fading'" given that each purchase was likely to have been a "relatively unimportant" event that occurred several years before the Survey interviews. See Pl.'s Mem., 15.[2] Although Plaintiff is correct that faulty

---

[2] The MMLP Album was released in 2000; the Survey interviews were conducted in 2003.

6

memory is one of the four classic dangers against which the hearsay rule is intended to guard, the Second Circuit held in Schering that there is no per se rule against the admission under Rule 807 of surveys that rely on memory and that are offered to prove the facts remembered. 183 F.3d at 221.[3]

The fact that memories fade is not a fatal flaw for a survey based on memory; even Plaintiff's expert, Ross, has designed and defended the use of a survey based on respondents' memories. See Grupo Gigante S.A. de C.V. v. Dallo & Co., 119 F. Supp. 2d 1083, 1093 (C.D. Cal. 2000), vacated on other grounds, 391 F.3d 1088 (9th Cir. 2004). In Grupo Gigante, Ross's survey asked respondents, "As best you can recall, about when was it that you first heard of the Mexican store named Gigante?" Grupo Gigante, 199 F. Supp. 2d at 1093. This question required respondents to think back as far as thirty years – ten times longer than required by the Survey in the instant case. Id. The district court in Grupo Gigante admitted Ross's survey and called it "[t]he most persuasive evidence the plaintiffs have provided."

---

[3] Defendants also cite other persuasive decisions in which surveys that called upon respondents' memories were admitted under Rule 807 to prove the facts remembered. See, e.g., Harolds Stores, Inc. v. Dillard Department Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996)(admitting survey that asked young women whether they had seen an allegedly copyright-infringing pattern on skirts sold in defendant's department store); Debra P. v. Turlington, 730 F.2d 1405, 1413 (11th Cir. 1984)(admitting survey that asked teachers whether they covered certain material in the classroom in previous year).

7

Id.

Plaintiff further argues that the Survey's reliance on memory is problematic because "Respondents had to remember why they purchased [the MMLP Album] without being given any 'prompting reminding list of possible reasons.'" Pl.'s Mem. re Survey, 13 (citing Ivan Ross Evaluation of The Marshall Mathers LP Survey ["Ross Report"], 11). To the contrary, as noted supra, respondents were each given copies of the MMLP Album to hold in their hands as they answered the Survey questions, and the names of all the Album's songs were listed on the back cover of the CD case. The Court concludes that the listing of all the Album's songs on the back cover of the CD case sufficed to enable respondents to refresh their memories before answering the Survey questions.

(c) Lack of a control group

The Court is unpersuaded by Plaintiff's contention that the Survey should have provided a "control group."[4] Jay states that she did not use a control group because such groups are necessary only in surveys of "experimental design," which the Survey is not. See Decl. of Deborah Jay in Opp'n to Pl.'s Mot. to Exclude

---

[4] Plaintiff's expert, Ross, states: "[O]ne way to test the claim that the song "Kill You" played a critical role in purchasing the CD would be to compare [Jay's] survey answers to those from a matched group of respondents (a 'control group') who would have been asked the same questions about a song from another Eminem CD, a song which those familiar with the rap culture would have regarded as having played a crucial role in

8

Evid. of Defs.' Consumer Survey ("Jay Decl."), ¶ 6. Ross does not offer a persuasive refutation of this contention. See Ross Report, 8-9. In fact, Ross himself conceded that he was not sure that his proposed control group would be appropriate. See Ross Dep., 203:10-16.

(d) Demographic representation

Plaintiff argues that the Survey does not reflect a representative sample of MMLP Album purchasers; specifically, Plaintiff argues that the Survey excluded urban blacks to a disproportionate degree. Plaintiff has not offered demographic data concerning the purchasers of the MMLP Album against which the Survey's representativeness can be measured. Furthermore, Ross conceded that he had no reason to believe that people in different racial or socioeconomic groups would have different reasons for purchasing the Album. Ross Dep., 50:15-51:9. The Court thus finds that the representativeness of the Survey is not flawed.

(e) Data analysis

Plaintiff's final attack on the Survey's methodology, that Jay distorts the Survey's findings, is factually incorrect. Plaintiff contends that Jay gives undue weight to the one percent of respondents who mentioned only "Kill You" as their reason for purchasing the MMLP Album. Pl.'s Mem. re Survey, 16. Contrary

---

determining the purchase of the CD." Ross Report, 9.

to Defendants' assertion, Jay's report gives appropriate weight to the seven percent of respondents "who mentioned 'Kill You' alone and in combination with other songs as their reason for purchasing the CD".  See id.; supra, at 3.

Plaintiff also contends that Jay "completely fails to take into account" the thirty-eight percent of respondents who said they did not purchase the MMLP Album for any particular song or songs.  Pl.'s Mem. re Survey, 17.  Plaintiff argues, without substantiation, that "[a]t least some of those 38% who answered 'No' to question 3 must have purchased the CD for some of the songs on the CD, including the song 'Kill You.'"  See id.  Plaintiff's speculation is unhelpful.  It is equally possible to speculate that some of the respondents who purchased the MMLP Album, did so without having heard any of its songs, simply because they knew Defendants Mathers or Young by reputation or through their previous recordings, and desired to listen to their newest work.

For these reasons, the Court finds that Plaintiff's attacks on the Survey's data findings are baseless.

(f) Traditional hearsay dangers

For substantially the same reasons, the Court holds that the Survey has the circumstantial guarantees of trustworthiness required to overcome the dangers inherent in hearsay.  In particular, the Court holds: (1) that the Survey's methodology

10

overcomes the risk of insincerity because neither the interviewers nor the respondents knew why the Survey was conducted; (2) that the risk of faulty narration is minimized by the Survey's use of clear, non-leading questions; and (3) that the risk of faulty memory is minimized by the opportunity respondents had to examine the list of the MMLP Album's songs on the back cover of the CD case before answering the Survey's questions. See Schering, 189 F.3d at 233-34 (proper methodology can mitigate hearsay dangers).

Plaintiff points out that the Survey respondents' perceptions may have changed over time. A respondent may, as Plaintiff suggests, have bought the MMLP Album for one song on the Album, but may later have come to enjoy certain other songs on the Album, and the respondent may, as a consequence, mistakenly attribute his purchase of the Album to more than one song. On balance, however, the risk that some respondents' perceptions may be colored by repeated listening to the Album does not outweigh the circumstantial guarantees of trustworthiness provided by the Survey's methodology. See id. ("[A] hearsay statement need not be free from all four categories of risk to be admitted under Rule 807.").

### ii. Material Fact, Probative Value, and Interests of Justice

The Court also finds that the Survey meets the remaining requirements for admissibility under Rule 807. The Survey is

11

offered to prove a material fact: how to measure the sales value of "Kill You," in the context of it being one song among many on the MMLP Album. In addition, the Survey is more probative on this point than any other evidence that the proponents can procure through reasonable efforts.

Admitting the Survey into evidence serves the interests of justice and the general purposes of the rules of evidence, because the Survey is both trustworthy and necessary. See Schering Corp., 189 F.3d at 238 ("In the context of survey evidence, [these interests and purposes] are generally best served by the admission of surveys that meet these two criteria.").

### (2) Risk of Prejudice

The Court concludes that the Survey should not be excluded under Rule 403 because, contrary to Plaintiff's contentions, it is not so flawed in methodology that its potential for prejudice outweighs its probative value. The Court finds, for the reasons stated above, that the Survey is sufficiently trustworthy to be admissible. Plaintiff will have the opportunity to challenge its weight at trial.

For the above reasons, the Court denies Plaintiff's motion to exclude evidence of the Survey. Because the Survey is admissible, the Court will permit Jay to testify at trial. See

Fed. R. Evid. 702.

B.  **Plaintiff's Motion to Preclude Evidence relating to the Originality of "Pulsion" and Related Issues**

Plaintiff moves to preclude Defendants from presenting evidence: (1) that the "Pulsion" theme is not sufficiently original to warrant copyright protection; (2) that Defendants' copying of the "Pulsion" constitutes de minimis use; (3) that Defendant Young independently created the music of "Kill You"; (4) concerning a performance by Plaintiff of "Gavotte in D-Major"; (5) concerning an eight-measure piece written by Defendants' musicology expert; and (6) from two witnesses that Defendants have identified only as representatives from Intersong Paris and Warner Chappell.

**(1) Originality, De Minimis Use, and Independent Creation**

The Court agrees with Defendants that Plaintiff's motions regarding insufficient originality, de minimis use, and independent creation are not appropriately raised as motions in limine; they raise questions of material fact.  For the same reason, the Court denies Plaintiff's request to convert the motions in limine into a motion for summary judgment.[5]

Thus, the Court denies Plaintiff's motions to preclude

---

[5] The Court also notes that the deadline to file dispositive motions was December 2, 2002.  See Scheduling Order, Doc. No. 9, filed August 8, 2002.

13

Defendants from presenting evidence: (1) that the "Pulsion" theme is not sufficiently original to warrant copyright protection; (2) that Defendants' alleged copying of "Pulsion" constituted <u>de minimis</u> use; and (3) that Defendant Young independently created the music of "Kill You."

### (2) "Gavotte in D Major"

Defendants seek to offer evidence of a composition by Plaintiff entitled "Gavotte in D Major" (the "Gavotte recording") into which Plaintiff inserted a portion of "Pulsion," in support of Defendants' claim that "Pulsion" is a "building block" too fundamental to warrant individual copyright protection. See Defs.' Mem. in Opp'n to Pl.'s Motion re Originality ("Defs.' Mot. re Originality"), 19; Track 8 of "Jacques Loussier Plays Bach," Reply Decl. of Sara Edelman ("Edelman Reply Decl."), Ex. 1.[6] The Gavotte recording begins with a piece inspired by Johann Sebastian Bach. After approximately three minutes and twenty-one seconds, it segues into a portion of "Pulsion." The Gavotte recording then segues back to Bach-inspired material.

Defendants have not explained how Plaintiff's insertion of "Pulsion" in the Gavotte recording makes it more probable that "Pulsion" is too rudimentary to warrant copyright protection. If "Pulsion" is not a sufficiently original work, then the Gavotte recording will not be needed to demonstrate that fact. If "Pulsion" is a sufficiently original work, it is no less original by reason of its insertion into another work composed by Plaintiff that was expressly <u>intended</u> to be a blend of Loussier and Bach. The Gavotte recording is therefore irrelevant.

---

[6] The Gavotte recording appears as Track 8 on Plaintiff's album "Jacques Loussier Plays Bach."

Even assuming arguendo that the Gavotte recording is relevant and has some probative value, the Court finds that it should be excluded under Federal Rule of Evidence 403. Specifically, the Court agrees with Plaintiff that playing the Gavotte recording for the jury would likely leave jurors "confused as to why they are listening to a second version of 'Pulsion' contained within a discrete piece that is based on the work of a famous Baroque composer." Pl.'s Reply in Support of Mot. re Originality ("Pl.'s Reply re Originality"), 12. The Court shares Plaintiff's concern that the Gavotte recording may confuse the jury by causing them to wonder whether Defendants' use of "Pulsion" is the same as Plaintiff's use of Bach.

The Court concludes that the Gavotte recording is not relevant to proving that the "Pulsion" theme is a "building block" too fundamental to warrant individual copyright protection. The Court also concludes, in the alternative, that any probative value of the Gavotte recording is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See Fed. R. Evid. 401-403. Accordingly, the Court grants Plaintiff's motion to exclude any evidence concerning the Gavotte recording.

### (3) The Ferrara Composition

Defendants seek to offer evidence of a composition by their musicology expert, Lawrence Ferrara, which allegedly incorporates

16

all of the elements that Plaintiff asserts are common to "Pulsion" and "Kill You" into a new work that is substantially different from both "Pulsion" and "Kill You" (the "Ferrara composition"). See Defs.' Mem. re Originality, 3. Defendants offer this composition to prove that the elements of "Pulsion" that Plaintiff contends are infringed by "Kill You" are not unique to "Pulsion." Id. Plaintiff argues that the Ferrara composition is irrelevant and prejudicial.

The Court is unable to determine the admissibility of the Ferrara composition, because neither party has submitted a recording of the composition. The motion to exclude evidence concerning the Ferrara composition is therefore denied, but Plaintiff may renew this motion by submitting a recording of the Ferrara composition to the Court within one week of the date of this Order.

### (4) The Intersong Paris and Warner Chappell Witnesses

Defendants seek to offer testimony by representatives of two non-party corporations, Intersong Paris and Warner Chappell. Plaintiff asserts that he would be prejudiced by this testimony because Defendants have not identified these representatives by name. Plaintiff also asserts that he has been unable to seek any discovery from the companies because he does not know whom to contact.

The record reflects that Defendants offered to identify

17

these witnesses once they received the report of Plaintiff's French law expert.  See Edelman Reply Decl., Ex. 2.  Plaintiff asserts that he served that report on Defendants' counsel in May 2004, and that Defendants have still not identified the witnesses from Intersong Paris and Warner Chappell.  Pl.'s Reply re Originality, 13.  Defendants' brief does not explain why the witnesses have not been identified.

Defendants assert that Plaintiff has never sought discovery from Intersong Paris and Warner Chappell.  Because Plaintiff does not know who will be representing those non-party corporations before the Court, what their functions are, or even whether they are still employees of the corporations, it is understandable that Plaintiff has been unable to make demands for discovery.  It would be prejudicial to Plaintiff to allow the testimony of individuals whose identities have not been revealed during discovery.

Accordingly, the Court excludes testimony from the unidentified representatives of Intersong Paris and Warner Chappell, unless Defendants show, within one week of the date of this Order, substantial justification for having not identified the witnesses by name.  See Fed. R. Civ. P. 26(a)(1)(A) (requiring disclosure of name, address and telephone number of each individual likely to have discoverable information except that to be offered solely for impeachment); Fed. R. Civ. P.

18

the Ferrara composition; and

(5) grants Plaintiff's motion to exclude testimony from unidentified representatives of Intersong Paris and Warner Chappell.


SO ORDERED.

Dated:    New York, New York
          August 24, 2005

                                    _____
                                         Kimba M. Wood
                                  United States District Judge


Copies of this Order have been sent to counsel for the parties.

19